ROBERT B. RODENBAUGH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rodenbaugh v. Commissioner
Docket No. 2284-80.
United States Tax Court
T.C. Memo 1981-593; 1981 Tax Ct. Memo LEXIS 149; 42 T.C.M. (CCH) 1408; T.C.M. (RIA) 81593; October 14, 1981. Robert B. Rodenbaugh, pro se. Mary Schewatz, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioner's 1976 Federal income tax of $ 1,516 and an addition to the tax under section 6653(a) [1] of $ 76. The issues for decision are: *152 1. Whether petitioner is entitled to dependency exemptions under section 151(e)(1)(A) and section 152(a)(9) for two unrelated individuals; 2. Whether petitioner's filing status should be "head of household" under section 2(b); 3. Whether petitioner is entitled to deduct expenses for meals under section 162(a); 4. Whether petitioner is entitled to deduct moving expenses under section 217; and 5. Whether petitioner is liable for the addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, an addendum to the stipulation, and the exhibits attached to both documents are incorporated herein by this reference. Petitioner resided in Burbank, California, when he filed his petition in this case. From January to May 1976, Petitioner lived in New Castle, Pennsylvania. He was employed by Universal-Rundle Corporation as a truck driver. During this time two women, Hazel Ramsey and Mary Jane Reed, lived with petitioner. The women were not related to petitioner. Petitioner claimed these two women as dependents on his 1976 Federal income tax return. *153 Petitioner alleged that he bought their clothes, gave them a place to live, and fed them. [2] No evidence was presented as to the total support either of the women received in 1976 or as to what amount petitioner contributed toward that support. In May of 1976, petitioner moved from Pennsylvania to California. Both Hazel Ramsey and Mary Jane Reed accompanied petitioner on the trip, but they returned to Pennsylvania shortly after arriving in California, and did not receive any further support from petitioner after that time. In connection with the move, petitioner contracted with Allied Van Lines to move his furniture from New Castle, Pennsylvania, to Glendale, California. He prepaid $ 1,622 to Allied Van Lines but after the *154 move received a refund making to total cost for the moving company $ 1,196.63. Petitioner alleged that he spent $ 243 for meals and $ 165 for lodging during the trip. The expense for meals included amounts spent for Hazel Ramsey and Mary Jane Reed. Petitioner arrived in California on May 22, 1976. Beginning August 13, 1976, petitioner worked as a studio driver on an "on call" basis with Universal Studios. A studio driver could be assigned duties as a truck driver, limousine driver, or special equipment driver of tractor trailers, and carryalls. An "on call" basis employee was classified as a casual employee and was guaranteed only a day's work at a time. At the end of each day's work on "on call" worker reported to a dispatching office where he was told whether or not he was to work the following day. This depended on the level of production by the studio. Petitioner was employed by Universal Studios at least between August 13, 1976 and June 3, 1978. From August 13 to October 2, 1976, he worked a varying number of days each week. Three weeks during that time he worked five days; one week he worked four days; one week he worked three days; two weeks he worked one day; *155 and one week he did not work at all. From October 5, 1976 through April 16, 1977, he worked five days for 25 weeks and four days for three weeks. From April 19, 1977 through May 28, 1977, petitioner did not work. At no time in the 24-month period following petitioner's arrival in California was he a full-time employee with Universal Studios. Petitioner timely filed his Federal income tax return for 1976. On this return he claimed a filing status of "unmarried head of household" and three exemptions, one for himself, one for Hazel Ramsey, and one for Mary Jane Reed. With respect to both women, petitioner claimed on his return that they lived in his home for 12 months of the year and that he contributed 100 percent of their support. The women lived with petitioner only between January and May of 1976. Petitioner also claimed on his return a deduction of $ 2,270 for moving expenses, consisting of $ 1,622 for transportation expenses in moving his furniture and $ 648 for travel, meals, and lodging expenses during the trip from New Castle, Pennsylvania to Glendale, California. The $ 1,622 does not take into account the refund petitioner received from the moving company. It *156 is not clear whether petitioner received the refund in 1976 or 1977. Petitioner also claimed on his return a deduction of $ 2,223 for meals while he was away from home on business. This total represented money he allegedly spent for meals while he was employed as a truck driver both for Universal-Rundle Corporation in Pennsylvania and Universal Studios in California. On his tax return petitioner claimed that he was away from home 247 days and spent an estimated $ 9 a day for meals. At the trial petitioner conceded that at most he would have been "away from home" for 85 days from January through May and another 85 days from August through December for a total of 170 days. Petitioner alleged that while he was employed by Universal-Rundle Corporation he kept log books containing records of money he spent for meals but that he threw the logs away after one year. Petitioner alleged that he paid cash for the meals he ate while he was on the road but there is no substantiation of these expenditures. As part of the $ 2,223 meal expense deduction, petitioner claimed expenses incurred for meals while he was employed by Universal Studios in California. Petitioner allegedly worked 10 *157 to 18 hours a day for Universal Studios but was not away overnight at any time during the period August 13 through December 31, 1976. OPINION The first issue for decision is whether petitioner is entitled to dependency exemptions for two unrelated women who lived with him from January through May of 1976. On his 1976 tax return, petitioner claimed that he provided 100 percent of the support for both women and that both women lived with him throughout all 12 months of the year. Section 151(e)(1)(A) allows a deduction for personal exemptions of $ 750 "for each dependent (as defined in section 152) * * * whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $ 750." Section 152(a)(9) defines dependent as including an individual who (1) receives over half of her support from the taxpayer for the calendar year in which the taxable year of the taxpayer begins and (2) has as her principal place of abode the home of the taxpayer and is a member of the taxpayer's household for the taxable year of the taxpayer. Deductions are a matter of legislative grace, and petitioner has the burden of establishing that he is entitled to his claimed *158 deductions for personal exemptions. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. There is no evidence in the record relating to the total support that either of the two women received in 1976 or to what amount, if any, petitioner contributed toward that support. Petitioner has thus failed to carry his burden of proof as to whether he provided over half of the support for the two women during 1976. Even if petitioner had satisfied the support test, the two women would not have qualified as petitioner's dependents under section 152(a)(9). In order for unrelated individuals to be claimed as dependents under section 152(a)(9), they must live with the taxpayer and be members of the taxpayer's household throughout the entire taxable year of the taxpayer. Sec. 1.152-1(b), Income Tax Regs.; Trowbridge v. Commissioner, 268 F. 2d 208 (9th Cir. 1959), affg. 30 T.C. 879 (1958); McMillan v. Commissioner, 31 T.C. 1143, 1145-1146 (1959). The two women were members of petitioner's household only *159 for the first five months of 1976 and thus do not qualify as dependents under section 152(a)(9). The second question is whether petitioner is entitled to use the head of household rates in computing his 1976 tax liability. Section 1(b) sets out the head of household rates. Section 2(b)(1)(A) defines a head of household as an unmarried taxpayer who maintains as his home a household which constitutes for the taxable year the principal place of abode, as a member of such household, of any person who is a dependent of the taxpayer and with respect to whom the taxpayer is entitled to claim a dependency exemption. Section 2(b)(3)(B)(i) further limits the definition of section 2(b)(1) and provides that a taxpayer shall not be deemed a head of household by reason of having as a member of his household a dependent who is unrelated to him. Since we have held that petitioner was not entitled to dependency exemptions for the two women during 1976, it follows that he did not qualify for head of household filing status under section 2(b)(1)(A). Moreover, even if petitioner were entitled to claim the unrelated women as dependents, section 2(b)(3)(B)(i) would preclude him from filing as *160 a head of household since the women would qualify as dependents only under section 152(a)(9). Accordingly, petitioner must use the single rates under section 1(c) in computing his 1976 tax liability. The next issue is whether petitioner is entitled to deduct meal expenses incurred while he was a truck driver for Universal-Rundle Corporation in Pennsylvania and Universal Studios in California. Normally, a person's meals and lodging are purely personal, living, or family expenses that are nondeductible for tax purposes. Section 262. However, section 162(a)(2) makes an exception for traveling expenses, including meals and lodging, while away from home. To come within that exception, the expenses must be (1) reasonable and necessary, (2) incurred "while away from home," and (3) incurred in the pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465 (1946), rehearing den. 326 U.S. 812 (1946). Furthermore, for meal expenses to be deductible, the business travel away from home must be travel that requires sleep or rest overnight. United States v. Correll, 389 U.S. 299 (1967). The record is unclear as to the number of *161 days that petitioner was away from home overnight during his employment with Universal-Rundle Corporation and with Universal Studios. On his 1976 tax return, petitioner claimed that he was away from home for a total of 247 days and spent an estimated $ 9 a day for meals. At the trial, petitioner conceded that at most he would have been "away from home" for 85 days from January to May and another 85 days from August through December for a total of 170 days. However, we need not decide the number of days that petitioner was "away from home" overnight during these periods, [3] for regardless of whether petitioner has met the requirements of section 162(a)(2), he has in any event failed to satisfy the stringent substantiation requirements of section 274(d) for meal expenditures away from home. Section 274(d) denies any deduction under section 162(a)(2) unless the taxpayer substantiates by "adequate records" or "by sufficient evidence corroborating his own statement" the amount, time, and place of such expenditure.
*162 In the present case, petitioner has not complied with the requirements of section 274(d). During his employment with Universal-Rundle Corporation, petitioner maintained log books that contained records of money he spent for meals. However, petitioner threw out these log books after one year and failed to present any other contemporaneous records or any direct evidence corroborating his estimates of meal expenditures as required by sections 1.274-5(c)(2) and 1.274-5(c)(3), Income Tax Regs. Moreover, petitioner has not shown that his log books were lost due to a casualty beyond his control and has not attempted to substantiate his deduction for meals by reconstructing his expenditures as required by section 1.274-5(c)(5), Income Tax Regs,; Gizzi v. Commissioner, 65 T.C. 342 (1975). Section 274(d) expressly overturned the old rule of Cohan v. Commissioner, 39 F. 2d 540 (2d Cir. 1930), for this type of away from home traveling expense, and thus the Court can no longer accept estimates, however reasonable, for this type of meal expense. Sanford v. Commissioner, 50 T.C. 823 (1968), affd. per curiam 412 F. 2d 201 (2d Cir. 1969), *163 cert. den. 396 U.S. 841 (1969). On the record before us, we are unable to allow petitioner any of his claimed deduction for meal expenditures away from home. The fourth issue concerns petitioner's eligibility to deduct certain moving expenses under section 217. Section 217 provides in part: SEC. 217. MOVING EXPENSES. (a) Deduction Allowed.--There shall be allowed as a deduction moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual at a new principal place of work. (c) Conditions for Allowance.--No deduction shall be allowed under this section unless-- (2) * * * (A) during the 12-month period immediately following his arrival in the general location of his new principal place of work, the taxpayer is a full-time employee, in such general location, during at least 39 weeks, * * * Petitioner did not satisfy the condition of 217(c)(2)(A) because he was not a full-time employee of Universal Studios for 39 weeks during the 12-month period from May 22, 1976 through May 22, 1977. Section 217(d)(2) provides an exception to the conditions *164 of section 217(c)(2). [4] Under section 217(d)(2), if a taxpayer has not satisfied the 39-week requirement by the time prescribed for filing the tax return but it was still possible for him to satisfy that condition, then the moving expenses may be deductible. In this case it was not possible for petitioner to satisfy the 39-week requirement as of April 15, 1977. If he had worked full time from April 15, 1977 through May 22, 1977, he would have only worked 33 weeks. Moreover, petitioner was always an "on call" basis employee and thus was never a full-time employee of Universal Studios. Since petitioner could not have met the 39-week requirement, he is not eligible for a deduction for moving expenses. *165 Respondent has imposed an addition to tax for 1976 based on petitioner's negligence or intentional disregard of rules and regulations. [5] Petitioner has the burden of proving that no part of the underpayment was due to the prohibited reasons. Estate of Mason v. Commissioner, 64 T.C. 651, 663 (1975), affd. 566 F. 2d 2 (6th Cir. 1977); Axelrod v. Commissioner, 56 T.C. 248, 258 (1971). On his 1976 tax return petitioner claimed that Hazel Ramsey and Mary Jane Reed lived with him for 12 months when in fact they lived with him for only five months. He claimed meal and travel expenses for 247 days when at most he traveled only 170 days. *166 Petitioner has not met his burden of proving that the underpayment of tax was not due to negligence. Accordingly, we find no error in respondent's determination of an addition to tax under section 6653(a) for that year. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year here involved, unless otherwise indicated.↩
2. These two women had apparently lived with petitioner for at least two years prior to 1976. Petitioner testified that they lived with him because they "were no longer wanted at their parents' house." Petitioner alleged that in those years he had sent one to school and helped the other one to get a car so she could get a job. He also testified that he had claimed both of them as dependents in prior years. Those prior years are not before the Court.↩
3. However, it is clear that none of the travel for Universal Studios involved trips overnight, and none of that meal expense would be deductible. United States v. Correll, 389 U.S. 299↩ (1967).
4. Section 217(d)(2) provides: If a taxpayer has not satisfied the condition of subsection (c)(2) before the time prescribed by law (including extensions thereof) for filing the return for the taxable year during which he paid or incurred moving expenses which would otherwise be deductible under this section, but may still satisfy such condition, then such expenses may (at the election of the taxpayer) be deducted for such taxable year notwithstanding subsection (c)(2).↩
5. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations with Respect to Income or Gift Taxes↩.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.